The Honorable Tim Shallenburger State Representative, First District 2027 Fairview Baxter Springs, Kansas 66713
Dear Representative Shallenburger:
You request our opinion regarding the constitutionality of using mandatory student fees at state universities to fund political organizations or activities. You reference a recent California supreme court case which held that students must be allowed to opt out of such fees. For purposes of your request, you use as an example the University of Kansas which requires student fees and allows its student senate to allocate a portion of these fees to various student organizations, campus organizations, or university-sponsored or contracted activities. See
University of Kansas Code of Student Rights and Responsibilities, Art. 14 (Sept. 1993); Student Senate Rules and Regulations, Art. 7 (1993). We note that K.S.A. 76-719 authorizes collection of fees to support "appropriate student activities," but make no judgment as to the specific activities funded by the student fee, as no specific facts have been provided.
In Smith v. Regents of the University of California, 4 Cal.4th 843, ___ P.2d ___ (1993), cert. denied, Regents of the University of Californiav. Smith, ___ S.Ct. ___, 1993 WL 275214, 62 USLW 3237, 62 USLW 3238 (U.S. Cal., Oct. 4, 1993), university students challenged the manner in which a mandatory activity fee was used, i.e. to support student groups that pursue various political and ideological causes. Noting that contributions to support such causes are a form of speech and that "compelled speech offends the First Amendment, just as do restrictions on speech" (id., at 852), the court found that use of the mandatory fee to support groups espousing political and ideological causes impinged upon the students' first amendment rights. The court then applied strict scrutiny, requiring a compelling state interest and least restrictive means, to determine whether the university's interest in being free to determine how best to carry out its educational mission justified the first amendment violations. Finding that "a group's dedication to achieving its political or ideological goals, at some point, begins to outweigh any legitimate claim it may have to be educating students on the University's behalf" (id., at 855), thus overcoming the justification for the mandatory fee, the court held that the university would have to identify any such groups ineligible for mandatory funding and offer students the option of deducting a corresponding amount from the mandatory fee. Id., at 862.
The California supreme court premised its decision primarily on Kellerv. State Bar of California, 496 U.S. 1, 110 L.Ed.2d 1, 110 S.Ct. 2228
(1990) and Abood v. Detroit Board of Education, 431 U.S. 209,52 L.Ed.2d 261, 97 S.Ct. 1782 (1977). In Keller, the United States Supreme Court held that compelled membership in and payment of mandatory dues to the California state bar were justified by the state's interest in regulating the legal profession and improving the quality of legal services (and preventing "free rides"), and that the bar was therefore constitutionality authorized to fund activities germane to those goals out of the mandatory dues. The test used by the Court was "whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or `improving the quality of the legal service available to the people of the State.'" Keller,496 U.S. at 14, 110 L.Ed.2d at 14 quoting Lathrop v. Donohue, 361 U.S. 820,843, 6 L.Ed.2d 1191, 81 S.Ct. 1826 (1961). Thus, the Court did not forbid all use of mandatory dues to fund political or ideological activities of the bar, only to fund those activities not germane to the justification for imposing mandatory dues. Similarly, "Abood held that a union could not expend a dissenting individual's dues for ideological activities not `germane' to the purpose for which compelled associationwas justified: collective bargaining." Keller, 496 U.S. at 13,110 L.Ed.2d at 14 (emphasis added). See also Crosetto v. Heffernan,810 F. Supp. 966, 974 (N.D.Ill. 1992)
Both the majority and the dissent in Smith recognized the distinction between the entities addressed in Keller (a state bar) and Abood (a labor union) and the entity before the Smith court (a university). In the majority's view, this distinction works against the university — because its mission (education) is so broad, the question of whether the funding of activities is germane to that goal does not go far enough; one must balance the university's interest against the students' first amendment interests. Smith, 4 Cal.4th at 855. In balancing these interests, the majority held the weight was in favor of the students' rights. The dissent viewed the distinction as advantageous to the university, allowing the use of mandatory fees to support a multitude of organizations all of which were related to the goal of education, "as long as the funds are distributed in a neutral fashion [and not] to fund off-campus activities. . . ." Id., at 873. The dissent's view is in line with the second circuit court of appeals.
In Carroll v. Blinken, 957 F.2d 991 (2nd Cir. 1992), cert. denied,Carroll v. Blinken, 113 S.Ct. 300, 121 L.Ed.2d 224, 60 USLW 3816 (U.S., Oct. 5, 1992), the circuit court, also relying on Keller and Abood, upheld a state university's use of mandatory student fees to support an ideological/political organization. Acknowledging the general principal that "the state cannot constitutionally compel individuals to speak or think in prescribed ways" (id., at 995), and that use of the mandatory fee to fund political/ideological organizations constitutes forced association and speech (id., at 997), the court nevertheless held that such use of the mandatory fee was germane to the purpose justifying the fee, i.e. "1) the general promotion of extracurricular activities, 2) the facilitation of . . . `participatory civics training,' [citation omitted] and 3) the stimulation of robust campus debate on a variety of public issues." Id., at 999 and 1001. No balancing of interests was performed. [The court did, however, limit its holding to expenditures for activities occurring on campus finding off-campus expenditures not reasonable or necessary for the educational purpose. Id., at 1002.] Unlike the majority in Smith, the second circuit court of appeals did not apply strict scrutiny. Finding the funding provision content-neutral, the court looked "to see whether the regulation `promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Id., at 999. Just as the dissent in Smith, the circuit court held that requiring the fee promotes a substantial, if not compelling, government interest in providing a broad-based educational experience, and that that interest would be achieved less effectively without the mandatory fee. Id., at 1000-1001.
We are inclined to adopt the second circuit's analysis. The United States Supreme Court cases do not appear to establish a strict scrutiny test. Further, they do not appear to require balancing the first amendment infringement against the state's interests once it is determined that the fee requirement is "justified by state needs,"Lathrop, 367 U.S. at 849, 6 L.Ed.2d 1191, or "important government interests." Abood 431 U.S. at 225, 52 L.Ed.2d at 278. The use of the fee need only be "germane" to or "necessarily or reasonably incurred for" the purpose for which the compelled association is justified. Abood, 431 U.S. at 13-14, 52, L.Ed.2d at 14. A state university's mission is to provide broad-based educational experiences, including forums for enlightenment and opportunities to exchange thoughts and ideas. A mandatory fee to fund groups providing such opportunities and to avoid "free-rides" is justified by this important state interest. The fee may be used to support political and ideological speech if such expenditures are nondiscriminatory (so that the university is not imposing or advocating a particular point of view, but rather facilitating expression of various points of view) and are necessarily or reasonably incurred for the purpose of providing such educational experiences and opportunities. As in Carroll and the Smith dissent, however, the university may not allow use of a mandatory fee to fund lobbying efforts or other off-campus activities, or to fund partisan organizations or activities.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm